## In re BLUM.

## BLUM v. HOUSER.

(Circuit Court of Appeals, Seventh Circuit. January 10, 1913.)

### No. 1,898.

1. BANKRUPTCY (§ 224*)—PROPERTY CLAIMED BY THIRD PERSON—"COLORABLE."

The term "colorable," as used in the rule that a referee in bankruptcy has jurisdiction in summary proceedings to determine the validity of a claim by a third person of property alleged to belong to the bankrupt when it appears that the claim of such third person is merely colorable, means that the claim is made by one holding the property as agent' or bailee of the bankrupt, and does not apply where the claimant sets up as facts, and not as conclusions of law, matters which, if true, would constitute a statement of an adverse claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383; Dec. Dig. § 224.*

For other definitions, see Words and Phrases, vol. 2, pp. 1262, 1263.]

2. BANKRUPTCY (§ 224*)—PROPERTY OF BANKRUPT—ADVERSE CLAIM—JURISDICTION—PLENARY SUIT.

Where, in reply to an order to show cause why a bankrupt's wife should not turn over to the trustee $3,000, alleged to belong to the bankrupt's estate, she alleged that she had owned the money in her own right since the spring and summer of 1910, and that she had loaned it to her son-in-law on a chattel mortgage, who repaid the money May 16, 1911, and denied the referee's jurisdiction to determine the claim, it did not appear that her claim was merely colorable; and hence she was entitled at her election, to a determination thereof in a plenary suit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383; Dec. Dig. § 224.*]

Petition to review in matter of law an order of the District Court for the Western District of Wisconsin; Arthur L. Sanborn, Judge.

In the matter of bankruptcy proceedings of David Blum. Summary proceedings by Walter L. Houser, trustee of the bankrupt's estate, against Nettie Levy Blum to recover certain money alleged to belong to the estate. An order was entered requiring her to turn over the money to the trustee, and she petitions for review. Reversed, with directions.

David Blum was declared a bankrupt on April 12, 1911. Thereafter the referee entered an order upon him and his wife, Nettie Levy Blum, to show cause why they should not turn over to the trustee a certain sum of money amounting to about $3,000, which it was alleged Nettie Levy Blum had in her possession, belonging to her husband, David Blum. She answered the rule, setting up that she had owned the money since the spring and summer of 1910; that she had loaned it to her son-in-law, Joseph Schwartz, and had taken a chattel mortgage upon a certain moving picture business' located in Milwaukee, Wis., to secure the same; that thereafter, and on May 16, 1911, Schwartz repaid the same. She denied the jurisdiction of the referee and of the court on the ground that she was an adverse claimant and was entitled to have her claim adjudicated in a plenary suit. The referee retained jurisdiction, entered a restraining order, and ordered that she turn the money over to the trustee—which order was duly confirmed by the District Court. Thereupon she filed her petition for a review, assigning as grounds therefor that the money was her own, and that, under the facts of the case, neither

the District Court nor the referee had jurisdiction to enter a summary order requiring her to turn the same over to the trustee.

Aaron Heims, of Chicago, Ill., and John M. Olin, and H. L. Butler, both of Madison, Wis., for petitioner.

S. T. Swansen, T. C. Richmond, and R. W. Jackman, all of Madison, Wis., for respondent.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The only question presented is whether petitioner's answer sets up an adverse claim within the meaning of the bankruptcy act. If it does, then petitioner is entitled to have it adjudicated in a plenary suit.

The hearing before the referee seems to have proceeded upon the theory that the referee might inquire into all the facts attending the acquirement of the money by the petitioner and then determine from the evidence whether the claim of title was merely colorable or was adverse, and proceed accordingly. The referee found that petitioner's claim was fraudulent, and, at most, colorable, and not adverse, thus determining that the evidence given by petitioner, her husband, her son-in-law, and others was false.

On a petition to review, this court can pass only upon errors of law. We are therefore limited to the inquiry as to whether the conclusions of law of the referee and the District Court are sustained by their conclusions of fact, or whether, when petitioner set up in her answer that she was in possession of and claimed as her own the said money, she did not in fact state a case which ousted the summary jurisdiction of the court. This involves a disposition of the proposition whether the referee is vested by the statute with power in a summary proceeding to weigh the evidence and pass upon contested matters of fact in order to determine—not whether petitioner claimed to hold adverse title to the money as being her own, but whether the evidence she offered as to her title thereto was worthy of credence.

[1] The term "colorable" seems to have crept into the bankruptcy decisions without authority of statute, unless it be construed to mean merely that if a respondent sets up as facts, and not as conclusions of law, matters which, if true, would constitute a statement of an adverse claim, then the claim would be adverse and not colorable, and not within the jurisdiction of the referee. It can hardly have been the purpose of Congress to deprive a litigant of the benefit of a plenary hearing in cases involving the determination of contested questions of fact. Undoubtedly, one holding property of the bankrupt as an agent or bailee may be required summarily to turn it over to the trustee, and, in a proper case, to a receiver; but we are of the opinion that, whenever the facts alleged on their face disclose possession and a legal right in the party claiming title, the referee has no jurisdiction in a summary proceeding to require the property to be turned over without the consent of the respondent. The decisions which hold it to be the duty of the referee to determine whether a claim is colorable or adverse, and, if colorable only, to proceed to deal with it in a summary way, seem to be predicated mainly upon the language of the Su-

preme Court in Mueller v. Nugent, 184 U. S. 1, wherein, on page 15 (22 Sup Ct. 269, on page 275 [46 L. Ed. 405]), the court says:

"But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review."

[2] It will be readily seen that unless the term "colorable," as here used, is construed as above, an endless inquiry would be opened up. The term itself is indefinite, varying with the standpoint from which it is approached. It appears from the opinion in Mueller v. Nugent that the referee found that the money was held by the respondent as agent for the bankrupt. No claim of adverse title was set up until after the matter was decided. The District Court held that the motion for leave to amend setting up respondent's claim to be the owner of the money and, consequently, an adverse claim, came too late. Up to that time respondent's defense had rested upon the ground that he had not received the money or any part of it after the petition in bankruptcy was filed. No objection was made before the referee or the district judge to the authority of the referee as such to entertain those proceedings. These facts were found by the court.

"The position now taken," says the court at page 15 of 184 U. S., at page 275 of 22 Sup. Ct. (46 L. Ed. 405), "amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact, and therefore an adverse claim when the petition was filed, and to that we cannot give our assent."

The Supreme Court, further says:

"In this case, however, respondent asserted no right or title to the property before the referee, and the circumstances under which he held possession must be accepted as found by the referee and the district court."

The court then cites Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, and Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, in support of the proposition above stated.

It will be observed that the question here involved was not then before the court. We see nothing in the opinion, however, which conflicts with our construction of the term "colorable."

In the case of Louisville Trust Co. v. Comingor, 184 U. S. 19, 22 Sup. Ct. 293, 46 L. Ed. 413, it appears that Simonson and others, copartners, made an assignment to Comingor for the benefit of their creditors, in accordance with the statute of Kentucky. Shortly thereafter, Comingor brought suit involving the administration and settlement of the estate in the Circuit Court, as he was by said statute authorized to do. Some time after the assignment, an involuntary proceeding in bankruptcy was filed against Simonson and others, partners, etc., setting up the assignment as ground therefor. In due time they

were adjudicated bankrupts. Comingor was made a defendant to the petition in bankruptcy, but no relief was asked against him, and he moved to be dismissed out of the proceedings. No action was taken on that motion. Later, the District Court enjoined him from proceeding further with reference to the bankrupt's estate. Later, without notice, the referee directed him to file a statement covering the bankrupt's estate, which he did. Thereupon, a receiver was appointed, and he was ordered to apply to the Circuit Court for the whole of the fund in that court. This the Circuit Court declined to consent to. Thereafter, a trustee was chosen and directed to take steps to become a defendant to the Circuit Court proceeding, and to procure possession of the fund. This was done, and the fund turned over. Comingor was then ordered by the referee to show cause why he should not be required to pay over funds retained by him. He responded that he had kept some $6,598.90 and applied same on his attorney's fees and commissions as assignee. This sum the referee ordered to be paid over. On review by the District Court, the referee was ordered to take account of character and value of the services and outlays of Comingor and his lawyers. Thereupon Comingor tendered an amended answer setting up want of jurisdiction over either the person or subject-matter. This answer was rejected by the referee, and later by the court. The referee reported that neither the receiver nor his attorneys had rendered any services of value to the creditors. The District Court confirmed the referee's report, and held that Comingor had acquiesced in the jurisdiction of the court and dismissed the petition for review, and ordered the money paid over. The Court of Appeals reversed the case. Certiorari was granted, and the Supreme Court held (184 U. S. at pages 24, 25, 22 Sup. Ct. at page 296 [46 L. Ed. 413]) that, on the face of his responses, Comingor had set up an adverse claim, and that the case came within Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, and that the question involved—

"could only be raised in the District Court by consent, and then only by a plenary suit. * * * We think that it could not have been the intention of Congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law in defense of their rights"— citing Marshall v. Knox, 16 Wall. 556, 21 L. Ed. 481, and Smith v. Mason, 14 Wall. 419, 20 L. Ed. 748.

Further on in its opinion the court holds that Comingor did not consent to the jurisdiction of the court, and affirmed the Circuit Court of Appeals in reversing the District Court.

In Whitney v. Wenman, 198 U. S. 552, 25 Sup. Ct. 781, 49 L. Ed. 1157, Mr. Justice Day says:

"We think * * * that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same, and the extent and character of liens thereon or rights therein, and citing a number of cases."

In First National Bank v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, it was held that, the court having

found that it was not in possession of the property, the jurisdiction of the District Court did not attach.

In Johnston v. Spencer, 195 Fed. 215, at page 219, 115 C. C. A. 167, at page 171, the Court of Appeals for the Eighth Circuit, after reviewing a number of cases, says:

"According to these controlling decisions, the possession of property of the bankrupt at the time of the institution of the proceedings in bankruptcy is a necessary condition to jurisdiction in the Circuit Court to determine the rights of third parties to it, except when such jurisdiction is invoked by their consent. The possession may be in the bankrupt himself or by some one for him as his agent or bailee"—citing Mueller v. Nugent, supra.

We are advised of no Supreme Court decision which recognizes jurisdiction of the District Court to deal summarily with the rights of one in possession and claiming title to property, as here, even though there be grave suspicions as to the bona fides of the claim. This holding we believe to be not in conflict with the language of the Supreme Court in Sharpe v. Doyle, 102 U. S. 686, 689, and 690 (26 L. Ed. 277), approved by the court in Bryan v. Bernheimer, 181 U. S. 188–196, 21 Sup. Ct. 557, 560 (45 L. Ed. 814), viz.:

It is made "his [the officer's] duty to collect and hold possession until the assignee is appointed or the property is released by some order of the court and he could ill perform that duty if he should accept the statement of every man in whose custody he found the property which he believed would belong to the assignee when appointed, as a sufficient reason for failing to take possession of it."

We believe the true rule to be as above stated, viz., that where a party in possession sets out in his answer facts which, if true, would constitute an adverse title, the court may not in a summary proceeding, and against his protest, dispose of his rights in property. It therefore follows in the present case that petitioner was entitled to have her claim adjudicated in a plenary suit. The decree of the District Court must be reversed, with direction to vacate the same and release further jurisdiction of the summary proceeding.

Reversed.