### COHEN v. HESSEL.

#### In re NASH.

(Circuit Court of Appeals, Third Circuit. February 28, 1922.)

#### No. 2789.

Bankruptcy ⬅116—Person commingling goods of bankrupt with his own cannot complain of seizure.

If, in the seizure of alleged concealed goods of a bankrupt, they were found commingled with other goods, such commingling did not deprive the court of the power to take steps to separate the goods, and the party commingling the goods cannot complain of the consequences following his conduct, and contend that the court had no jurisdiction to seize the property and require him to show the nature of his title and claim to the goods seized.

Petition for Review from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

In the matter of the bankruptcy of Harry Nash, bankrupt, in which John R. Hessel was appointed receiver. Petition by George M. Cohen to review and revise a decree. Decree affirmed.

R. L. Levy, of Scranton, Pa., and David Oppenheimer, of Wilkes-Barre, Pa., for petitioner.

Sophia M. R. O'Hara, of Wilkes-Barre, Pa., for receiver.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This is a petition to review and revise certain proceedings had in the administration of the bankrupt estate of one Nash. From an examination of the record, the following facts, inter alia, are disclosed:

On November 11, 1920, a petition in bankruptcy was filed. On November 15, one Hessel was appointed receiver. On December 13, Nash was adjudged bankrupt. On December 27, a petition of Hessel, the receiver, was presented to the court, setting forth the above jurisdictional facts, and that on November 29, and prior to adjudication, the receiver had seized certain assets of Nash which the latter had concealed with fraudulent intent; that Nash averred that, on the night preceding such seizure, the place where part of his assets were secreted in Wilkes-Barre, Pa., had been broken into and $3,042.50 of goods stolen. The petition averred, on information received, that the stolen goods and other assets concealed by Nash were in possession of John Cohen, under the name of the New York Store, in Danville, an adjoining town.

The petition further represented that on December 20 the receiver, under an order of court, had sold to one Druck, a resident of Wilkes-Barre, the assets so found and received by Cohen, and that immediately after confirmation of the sale Druck carted the goods by auto truck to Cohen's Danville store; that prior to the delivery of these latter purchased goods to Cohen's storeroom an examination of the goods there had been made, and certain goods therein were identified as belonging to Nash, and which were part of the goods which the latter claimed had been stolen in Wilkes-Barre, at the place where his remaining goods were found concealed.

On presentation of this petition, the court issued an order to the marshal to seize the goods of Nash in the possession of Cohen, and to hold the same until the further order of the court. This order further directed—

"the said New York Store, alias John Cohen, on the seizure of the goods by the United States marshal, to file claim in this court, to show his *title to the same*, within 10 days from the day of seizure, and, if he fails to file any claim for these goods within 10 days from the seizure thereof, the United States marshal to turn over the said goods to John R. Hessel, receiver of the goods, and to be disposed by him under the further order of this court."

At this point we note that, under the allegations of this petition, the order to the marshal to seize the concealed goods of the bankrupt and hold the same pending the further order of the court was justified by that provision of the Bankruptcy Law which authorized the court "to take charge of the property of bankrupts after the filing of the peti-

tion and until it is dismissed or the trustee is qualified." If in the seizure of these alleged concealed goods they were found commingled with other goods of Cohen's, such commingling certainly did not deprive the court of power to take proper steps to separate Cohen's own commingled goods from those of the bankrupt, and if by the commingling Cohen subjected himself to inconvenience while this separation took place, he cannot complain of the consequences which usually follow such conduct.

Seeing, then, that the allegations of the petition justified the issue to the marshal of the order to seize and hold, the record shows that Cohen, on coming into court on his petition, sworn to by his counsel on December 30, and replying to the petition, made no claim or alleged no title to the property seized by the marshal, but limited his petition to questioning the jurisdiction of the court to issue the order, and the sufficiency of the averments of the petition to warrant the court's action. But the matter did not stop with these proceedings, which, it will be seen, shows no assertion of title by Cohen, or any claim of title, or any disclosure of such nature as to enable the court to determine whether there was a claim of title adverse to the bankrupt, and that the case was one for a plenary suit. No doubt, in line with Cohen's suggestion of lack of definiteness of averment in relation to Nash's goods, the receiver on January 5, 1921, filed a second and more definite petition, and again the court—vacating, as it is said, though the record does not show that fact, the first order entered on the receiver's first petition—by its second and later order gave Cohen an opportunity to inform it as to the nature of his title, if any, to the goods which the marshal then held. The reply of Cohen on January 17, 1921, was a repetition of a challenging of the court's jurisdiction and power to seize, and again failed to state the nature of his claim or title to the goods then in the possession of the marshal, and the only suggestion of right on his part was the right of possession, and a challenge of the court's jurisdiction in these words:

"This court has no jurisdiction to seize property in the possession of a person other than the bankrupt, which property admittedly was never a part of the bankrupt estate. * * * The order as made in this proceeding is null and void, in that it is made in denial of the right of your petitioner to have his right to the possession of his property inquired into by due process of law."

But, in spite of this failure of Cohen to inform the court as to the general nature of his title, the court did not conclude him, but on January 8 referred the whole matter to its referee, who heard the testimony, afforded Cohen a third opportunity to show what was the nature of his title or claim to the goods the marshal had seized, which jurisdiction and power on the court's part to ascertain whether the case is one for a plenary action has been so long exercised by courts of bankruptcy—see In re Friedman (D. C.) 153 Fed. 939 (decided 1907), and In re Holbrook (D. C.) 165 Fed. 973 (decided 1908)—that it would serve no present purpose to here vindicate it. Thereafter the referee found Cohen's claim was a colorable one, and the court approved that finding. Presumably this finding of the referee and the

court's approval were right, and in the absence of the testimony, which we have not before us in this petition to revise, we have no warrant or ground for disturbing it.

No error appearing in the record, the decree below is affirmed.