### In the Matter of GILBERT'S HOTEL, INC., Bankrupt.

### No. 65 B. 922.

United States District Court
S. D. New York.
Sept. 25, 1969.

Oppenheim & Drew, Monticello, N. Y., for Gilbert's Hotel, Inc., Bankrupt, Tarry Brae Hotel and Morris Gimple; Theodore Drew, Monticello, N. Y., of counsel.

J. Stanley Shaw, New York City, for petitioner Gordon Const. Corp.; Irving L. Weinberger, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Alleging various errors in the final Order of Referee in Bankruptcy R. Lewis Townsend, dated January 22, 1969, the Gordon Construction Corporation, a creditor of bankrupt Gilbert's Hotel, Inc., petitions this Court for review from that Order. Respondents Tarry Brae Hotel, Inc. and Morris Gimple cross-move for an order dismissing the petition for review for allegedly failing to comply with the provisions of Section 39, sub. c of the Bankruptcy Act, 11 U.S. C. § 67(c).

On November 16, 1965, Bankrupt, as landlord, executed and delivered a lease on its realty known as Gilbert's Hotel in South Fallsburg, New York, to Tarry Brae Hotel, Inc. By the terms of this lease, which entitled Tarry Brae to occupancy until September 16, 1966 "unless the foreclosure sale under the New York Business Development Corp. mortgage takes place sooner in which case this lease shall end upon such sale", the tenant agreed to pay the rent of $1.00 upon the signing of the lease and, in addition, "to keep the hotel premises heated, cared for and maintained during the entire period of this lease, whether the hotel is open for business or not, in order to guaranty that the hotel shall be known to be open" and thereby preserve and maintain the public's good will. On November 22, 1965, an involuntary petition in bankruptcy was filed against the Bankrupt.

By his order of January 22, 1969, which affirmed his original decision dated April 14, 1966, the order thereon dated June 13, 1966 and the decision of July 6, 1966, Referee Townsend rejected the claim of the Gordon Construction Corporation (hereinafter referred to as "Gordon") that this lease was executed to hinder, delay and defraud creditors in violation of Section 67, sub. d of the Bankruptcy Act, 11 U.S.C. § 107(d), and for damages against Tarry Brae Hotel, Inc., Morris Gimple, Anne Gilbert and Carl Gilbert, as the principals involved, for the alleged illegal use and occupancy of the hotel.

On January 30, 1969, a petition for review signed by J. Stanley Shaw, as attorney for both Gordon and the trustee in bankruptcy, Carl Goldstein, was filed with Referee Townsend. This petition was rejected by the Referee on the grounds that Shaw was unauthorized to act for the trustee and, further, that Shaw's $10.00 check to cover the filing fee was not certified and was erroneously made payable to "United States District Court" instead of to "Clerk, U. S. District Court". Referee Townsend also extended the time in which Gordon could file another petition for review to February 6, 1969. Shaw submitted a new petition on February 3, 1969, which was again rejected by the Referee, who further extended the time for Gordon to file a revised petition to February 10, 1969. This petition was submitted by Shaw on February 6, 1969.

Respondents argue that this petition for review should be dismissed pursuant to Section 39, sub. c of the Bankruptcy Act, 11 U.S.C. § 67(c), General Orders in Bankruptcy 21, 37 and "the applicable sections of the Federal Rules of Civil Procedure" as untimely, not made by a party in interest, but rather by that party's attorney, and unverified.

Section 39, sub. c of the Bankruptcy Act provides:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge * * *. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final."

Referee Townsend obviously treated Shaw's defective petitions for review as applications for an extension of time to file a revised petition. The

ten-day period for filing provided in Section 39, sub. c is a limitation on the filing of a petition for review by a person aggrieved thereby as a matter of right, but should not be considered as a limitation on the discretionary power of the Referee to grant leave to make a late filing. This is especially so where the extensions granted by the Referee did not exceed ten days and were promptly and timely complied with. Finkelstein v. Keith Fabrics, Inc., 278 F.2d 635, 638 (5th Cir. 1960); see Potucek v. Cordeleria Lourdes, 310 F.2d 527, 529–530 (10th Cir. 1962), cert. denied, 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed. 2d 734 (1963); In re Sorenson, 215 F. Supp. 814 (D.Utah 1963). Having timely filed the initial petition for review, which was rejected by the Referee, Shaw should not be required to perform the purely perfunctory and meaningless act of petitioning for an extension of time for refiling which had already been granted by the Referee.

█ While it is true that Shaw, not being "a person aggrieved" by the order of the Referee, had no right *on his own motion* to seek review of that order, In re Foreman, 15 F.2d 51 (2d Cir. 1926), since the text of the petition for review indicates that it was taken on behalf of Gordon, "a person aggrieved", the district court may consider the petition for review as though signed by Gordon. In re F. P. Newport Corp., 137 F.Supp. 58, 60 (S.D.Cal.1955), aff'd, Newport v. Sampsell, 233 F.2d 944 (9th Cir.), cert. denied, 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 238 (1956).

█ There exists a dearth of authority on the question of the verification of petitions for review. However, the Court in In re Peppers Fruit Co., 24 F. Supp. 119, 121 (S.D.Cal.1938) noted:

"There appears to be nothing in the Bankruptcy Act, or the general orders, or the rules of this court, which require that a petition for review be verified; although this has apparently been the customary practice."

General Order in Bankruptcy 37 makes the Federal Rules of Civil Procedure applicable to proceedings under the Bankruptcy Act "in so far as they are not inconsistent with the Act." Rule 11 of the Fed.R.Civ.P. provides that "[e]xcept when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit." In order to achieve greater procedural uniformity and to eliminate any inconsistency with the law in most other proceedings in the Federal Courts, Section 18, sub. c of the Bankruptcy Act, 11 U.S.C. § 41(c), which provided that "[a]ll pleading setting up matters of fact shall be verified under oath", was amended in 1959 to read "[p]etitions for both voluntary and involuntary bankruptcy shall be verified under oath." In light of this, and the absence of any requirement in the rules of this court for verification of petitions for review, I believe that the requirement for verification in Section 18, sub. c, as amended, should not be extended to petitions for review. Further, considering events subsequent to In re Cox Baking Co., 77 F.2d 294, 295 (2d Cir. 1935), that decision should not be viewed as authority to the contrary.

Accordingly, respondents' motion to dismiss the petition for review is denied.

█ On the instant petition, the burden of proving that a conveyance or transfer made by Bankrupt was contrary to Section 67, sub. d of the Bankruptcy Act rests on Gordon. Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 109 F.2d 924, 926 (2d Cir. 1940). In this regard, I must accept the Referee's findings of fact unless they are shown to be clearly erroneous. General Order in Bankruptcy 47; Shainman v. Shear's of Affton, Inc., 387 F.2d 33, 37 (8th Cir. 1967); Dabah v. Simmons, 205 F.2d 55, 56 (2d Cir. 1953); In re G. E. C. Securities, Inc., 223 F.Supp. 861 (S.D.N.Y. 1963), aff'd, 331 F.2d 655 (2d Cir. 1964); In re Gibraltor Amusements, Ltd., 187 F. Supp. 931, 934 (E.D.N.Y.1960), aff'd, 291 F.2d 22 (2d Cir.), cert. denied, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190

(1961). For if there exists a reasonable basis in the record for a referee's ultimate findings of fact a reviewing court cannot reverse such findings and substitute its own. In re Arbycraft Co., 288 F. 2d 553, 556–557 (3rd Cir. 1961). Further, the Referee's findings of fact may be considered clearly erroneous only if they are based upon a substantial error in the proceedings or upon a misapplication of the controlling law, or if they are unsupported by any substantial evidence or are contrary to the clear weight of all the evidence. In re Woerderhoff Shoe Co., 184 F.Supp. 479, 482 (N.D.Iowa 1960), aff'd, O'Rieley v. Endicott-Johnson Corp., 297 F.2d 1 (8th Cir. 1961). .

■ A careful review of the whole record before this Court reveals no such error by the Referee and, accordingly, his decision is affirmed.

"Whether a fair consideration has been given up or a burdensome obligation is the circumstances of the case. Thus, whether a release of rights under a contract or the surrender of a lease is made for a fair consideration must depend upon whether a good bargain is being given for a transfer must depend on all being discharged. Fairness in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." (Footnotes omitted.) 4 Collier on Bankruptcy ¶ 67.33 at 508 (14th ed. 1967).

The consideration for the lease in question was the obligation of Tarry Brae to maintain the premises and the good will of the hotel, protect the physical plant during the winter months and, in general, to preserve the one asset that the Bankrupt had and could not itself preserve, that is, its buildings and reputation.

This obligation was incurred, it must be noted, at a time when the hotel business in Sullivan County was slowest and when the treacherous winter months play havoc with such structures. In view of the fact that word had spread of Gilbert's financial problems, convention bookings had been cancelled for the fall and spring months. The hotel's potential was worse than it had ever been. Additionally, mortgage foreclosure was imminent and had been commenced when the lease was made, so that the lessee was faced with a situation wherein it might ulitmately be dispossessed by the mortgagee after maintaining the hotel throughout the entire winter without having had the opportunity to recoup its losses in the spring and summer. It was in this framework that the lease was made and, accordingly, its fairness should be judged with these considerations in mind. For the preservation of the good will and physical facilities of the hotel during the term of the lease inured to the benefit of both the secured and unsecured creditors of the Bankrupt. Further, the offer made by the Beth-Green Realty Corporation to lease Gilbert's Hotel must be viewed in light of the fact that it was not to commence until April 1, 1966, after the long winter was over and when hope of reaping some profit was available to a tenant.

By ex parte order procured in the Supreme Court, Sullivan County, Harold Sussman, Esq., was appointed Receiver in an action commenced by Gordon to foreclose its second mortgage on the Bankrupt's property. It does not appear that service of this order was made or even attempted on Gilbert's Hotel. Subsequently, Sussman was stayed and enjoined from acting as Receiver or performing any duty thereunder by the terms of an order to show cause signed by Judge Isadore Bookstein on October 15, 1965. This order was served upon all the attorneys concerned. By subsequent decision of Judge Lawrence A. Cooke, it was found that the appointment of the Receiver might continue but was modified to the extent that possession of the premises and management of the hotel by the Receiver was deleted from the prior order of appointment. Although Judge Cooke's decision, which was typewritten and unsigned, provided that counsel "[s]ubmit order on notice of two days", no order was ever submitted with respect to this decision. CPLR Rules 2219, 2220. It is therefore evident

that the original appointment of a Receiver did not effect the validity of the lease in question since the Receiver was not empowered to act when the lease was made. Further, the Referee's finding of fact, based on oral evidence, that the tenant did not know of the original appointment of the Receiver, is entitled to great weight, and there appears nothing in the record to suggest a contrary finding. In re Barcia, 147 F.2d 288 (2d Cir. 1945); In re Golden, 108 F.Supp. 592, 593 (S.D.N.Y.1952).

Accordingly, and for the foregoing reasons, the decision of the Referee is affirmed.

So ordered.